## Case No. 6,641.

HOLMES v. LISSBERGER.

[See Case No. 6,632a.]

---

## Case No. 6,642.

HOLMES et al. v. The LODEMIA.

·[Crabbe, 434.] [1]

District Court, E. D. Pennsylvania. July 16, 1841.[2]

SEAMEN—WAGES—FORBEARANCE—PRESUMPTION OF PAYMENT.

1. A forbearance to sue for nine months, even if the libellant was on the spot and the vessel

[1] [Reported by William H. Crabbe, Esq.]
[2] [Affirmed by circuit court; case unreported.]

within the power of the court during that time, does not raise a presumption of payment, either in the admiralty or any other court.

2. The mere naked fact that a plaintiff in the admiralty, or any other court, has discontinued his action, is not a bar to a subsequent suit.

This was a libel for wages [by John Holmes and Samuel Stratton, mariners, against the schooner Lodemia and Eliza, Levi Paine, master].

O. Hopkinson, for libellants.

G. M. Wharton, for respondents.

HOPKINSON, District Judge. John Holmes states that in April, 1839, the schooner Lodemia and Eliza being in the port of Philadelphia, and destined on a voyage to New Orleans and other places, Levi Paine, who was then her master, hired him to serve as a mariner on board of the schooner for her said voyage, at the rate of $16 per month, and he refers to the shipping articles to verify this allegation; he then goes on to allege a faithful performance of his duty for the space of eighteen months; and that he is entitled to the balance of wages due to him for the said service, which he avers is $195 22. The whole amount earned was $288. He allows credits for payment of $97 15, and makes an additional charge of $4 37, making the balance as already stated. The master of the vessel being changed, the answer is put in by William Pierce, the present master, who is also a part owner of the vessel, on behalf of himself and the other owners. The respondent alleges that the shipping articles referred to in the libel are in the possession of Levi Paine and not under his control, and therefore he cannot produce them to the court. In regard to the libellant Holmes, the answer merely avers that he has been paid his wages; that he was discharged from the schooner in October, 1840, and there is nothing due to him. Supposing the time of shipping to be correct,—and there is no denial of it,—the time of the discharge of the libellant, as stated in the answer, agrees with the term of service set forth in the libel, and is so far a confirmation of its truth. The whole defence against Holmes's claim is that he has been paid. Neither the service nor the rate of wages is brought into question. The only evidence of this payment set out in the answer, or relied upon in the argument, is that he "was discharged from the schooner in October, 1840, and, if he had any claim against her, it was in his power fully to bring it forward; that he has lain by, without preferring his claim, till this time—an interval of nine months." The owners of this schooner resided at Melville, in Cumberland county, New Jersey, but the libellant was shipped at Philadelphia, where the schooner then was. The port of her discharge and the termination of the voyage was at Melville. It may be presumed that the seamen, immediately on their discharge, came to this port to seek further employment, and it is no ground of

complaint, or evidence of payment, that they did not take out process, for the recovery of their wages, against the owners, in the district court of New Jersey, the judge of that court residing at a great distance from the residence of the owners. In November following, it appears that the schooner was again at Philadelphia, but whether Holmes had not gone to sea is not shown. It is also to be remembered that he took from the captain a certificate, now produced, stating that there was due to him, for wages, a balance of $218. Without attempting to account for his neglecting or delaying his suit for the recovery of his wages, it is enough to say that on no authority or reason can it be asserted that a forbearance to sue for nine months, even if the libellant had been here, and the schooner within the power of the court (which facts do not appear), raises a presumption of payment, either in the admiralty or any other court; most especially as more direct evidence of payment must, or should, be in the power of the respondents, either by receipts given, or the accounts of the schooner settled with the late captain. So far as respects the claim of Holmes I find nothing that raises a reasonable doubt of its justice, with the exception of the charge for $4 37, for work done, as to which the proof that has been given is not satisfactory, and which must be deducted from his balance, leaving now due to him $190 85.

In the case of Samuel Stratton, the libel avers that he shipped on board the said schooner in September, 1838; the vessel then lying at Bridgetown in the state of New Jersey, destined on a voyage to Philadelphia, thence to New York, thence to St. Augustine, and other places; that he was hired to serve as first mate of the schooner, at the rate of $30 a month, and he refers to the shipping articles to verify these allegations. He further avers that he faithfully served as first mate of the schooner for the space of two years, and that there is a balance due to him of his wages of $197 75. His account, annexed to the libel, claims a balance of $226 and gives a credit, on account, of $28 25, thus leaving now due $197 75. The answer of the respondents to this claim makes no denial, and raises no question, as to the time of service or the rate of wages; the shipping articles, as before stated, they cannot produce. The defence is put altogether on the averment that the libellant "filed his libel in this court and procured an attachment on the 19th November, 1840, claiming payment of wages due to him as mate of said schooner, and being for the same cause of action as is set forth in the libel filed in this case." It is admitted that there was no adjudication made by the court in that case; indeed it appears by the record that no answer was filed, and, of course, no hearing had by the court. The process was returned on the 20th November "Attached," and on the 21st the entry is "Costs paid." The answer now avers that this proceeding is a bar to the present suit, "it being unlawful for the libellant to abandon the former process, and tax the owners with new prosecutions for the same matters." It is further contended by the answer "that the said proceeding was terminated by the said Stratton receiving satisfaction in full of his said claim, and that he was fully paid and his demand satisfied, and that, as the record will show, the costs were also paid." The first ground is matter of law. Was the discontinuance or discharge of that proceeding a bar to the present suit? The counsel who filed that libel is, unhappily, not in a situation to inform us for what reason, or on what terms, it was discontinued, nor does it appear by the record, by whom the costs were paid. In the argument of the case the counsel for the respondent did not insist upon this matter as a legal bar to the present suit; nor, indeed, was it possible to maintain that the mere naked fact that the plaintiff, in the admiralty or any other court, had discontinued his action, would be a bar to a subsequent suit. It is no unfrequent occurrence, and may be done for many reasons which do not affect the validity of the claim, or the right of recovery.

The respondents' case then rests on the allegation of full payment and satisfaction of the debt. This is clearly an affirmative plea and calls for proof from them. None has been produced, but here too the presumption arising from the commencement and discontinuance of the former suit has been relied on. As we are entirely ignorant of the terms or reasons of that discontinuance, what can warrant us in assuming that it was in consequence of the payment or satisfaction of the debt? Is there any necessary inference of the fact? Certainly not. Is it not as reasonable to presume that the libellant consented to withdraw his attachment of the vessel on some promise of payment, or some other amicable arrangement for delay? If this was the case, and payment was then, or afterwards made, in pursuance of some such agreement, it is inconceivable that this should have been done without some receipt, some acquittance given to the respondents. If, on the other hand, it is contended that this payment and satisfaction had been made before the suit was brought, why have we not the proof of it, by the receipt of the libellant, or by the account settled with the owners by the former captain, in which he certainly would have claimed a credit for these wages, if he ever paid them. The respondents are thrown back entirely upon the presumption that because the proceedings in the former suit were withdrawn, therefore the money was then paid, or it was shown that nothing was due. If the latter, why is not the same proof given now that was then shown to and satisfied the counsel for the libellant, who certainly did not abandon the case without some evidence that it could not be sustained? To my

mind the more reasonable presumption is, that the vessel was discharged on some engagement to satisfy the claim; and, if so, it must be in the power of the respondents to show what it was, and a performance on their part. This presumption is fortified by a circumstance of some weight, although not necessary for the libellant. The amount claimed in the former suit was a balance of $286. By the account now produced and the claim now made by the libellant, his demand is reduced to $197 75, from which it has been inferred, and not without reason, that, subsequent to, or upon the discontinuance of the former suit, payments were made, and were the consideration upon which the attachment was withdrawn, and the promise of the respondents relied upon for the full discharge of the debt. If this was the case, and the payment has been made, it is certainly in the power of the respondents to show it. It must be observed that annexed to the libel formerly filed by Stratton, and now invoked by the respondents, there is a copy of a certificate, given by the master of the schooner to Stratton, acknowledging that there was due to him, for services as mate of the vessel, a balance of $286, which is the amount claimed for him in that suit. This certificate is dated on the 20th October, 1840, at Melville; the time when Stratton was discharged. The libel was filed and the vessel attached one month after the date of that certificate. In the absence of any contrary proof we must presume that no part of the balance had been paid in that month, because no credit was given for it by the libellant; and no proof is shown of any payment by the respondents. We may, therefore, believe, that the credits, now given by the libellant, which have reduced his debt from $286, to $197.75, are on account of payments made since the withdrawal or discontinuance of that suit, and were probably the consideration of that forbearance. In the account now presented with the libel the dates of these credits are not given. They would have made this part of the case more clear, but, as it now stands. we know that at the time Stratton was discharged from the schooner there was due to him the sum of $286; that when he brought this suit, a month afterwards, he claimed the same sum, and no proof is shown that any part of it had then been paid; that he now claims but the sum of $197.75, giving credits, of course, for the payment of $88 25, which can hardly be rejected by the respondents, and if admitted they show that, subsequent to the commencement of the former suit, these payments have been made. I cannot imagine a reason for which the libellant would have allowed these credits, unless he has received payments to their amount. He would have brought his suit now, as formerly, for the whole amount certified by the master to be due to him. had he not received these sums.

Decree for the libellant Holmes for $190 85, and for the libellant Stratton, for $197 75, and costs.

On the 16th July, 1841, an appeal was taken from this decree, to the circuit court of the United States for the Third circuit, and on the 25th October, 1841, that court affirmed the decree, with costs. [Case unreported.]